## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| **BRADLEY MANN**, at el. | : | |
| | : | |
| v. | : | No.: 1:09-cv-01062-RBK-AMD |
| | : | |
| **TD BANK, N.A.**, et al. | : | |
| | : | |

## ORDER

AND NOW this _____ day of _____, 2010, upon consideration

of Defendants' Motion for Summary Judgment on Plaintiff Bradley Mann's Claims,

and Plaintiffs' response thereto, it is hereby **ORDERED** and **DECREED** that

Defendants' Motion is **DENIED**.

BY THE COURT:

_____

Hon. Robert B. Kugler, U.S.D.J.

**SILVERMAN & FODERA, PC**
Leonard V. Fodera, Esquire                          *Attorneys for Plaintiff*
Identification No.: 57203
Michael P. Lalli, Esquire
Identification No.: 203201
1835 Market St. – Suite 2600
Philadelphia, PA 19103

---

| | | |
|---|---|---|
| **BRADLEY MANN, at el.** | : | |
| | : | |
| | : | |
| v. | : | No.: 1:09-cv-01062-RBK-AMD |
| | : | |
| **TD BANK, N.A., et al.** | : | |
| | : | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF BRADLEY MANN

Plaintiff, Bradley Mann, by and through his undersigned counsel, respectfully requests this Court enter an order denying defendants' "Motion for Summary Judgment on Bradley Mann's Claims." Plaintiff hereby incorporates the attached Memorandum of Law, Response to Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Undisputed Material Facts in support of his response.

Respectfully submitted,

SILVERMAN & FODERA, PC

Leonard V. Fodera, Esquire
Michael P. Lalli, Esquire
1835 Market St. – Suite 2600
Philadelphia, PA 19103

Michael E. Berman, Esquire
MICHAEL E. BERMAN, P.C.
310 Riverside Blvd. – Suite 3I
Long Beach, NY 11561

Dated: 9|17|10

*Attorneys for Plaintiffs*

**SILVERMAN & FODERA, PC**
Leonard V. Fodera, Esquire                    *Attorneys for Plaintiff*
Identification No.: 57203
Michael P. Lalli, Esquire
Identification No.: 203201
1835 Market St. – Suite 2600
Philadelphia, PA 19103

---

|                        |   |                              |
| ---------------------- | - | ---------------------------- |
|                        | : |                              |
| **BRADLEY MANN**, at el. | : |                              |
|                        | : |                              |
|            v.          | : | No.: 1:09-cv-01062-RBK-AMD   |
|                        | : |                              |
| **TD BANK, N.A.**, et al. | : |                              |
|                        | : |                              |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON BRADLEY MANN'S CLAIMS

Plaintiff, Bradley Mann, by and through his undersigned counsel, hereby responds to defendants' Statement of Undisputed Material Fact in support of their Motion for Summary Judgment:

1.  Denied as stated.  Plaintiffs' Class Action Complaint is a complete document and must be read as such.[1]

2.  Based upon Matthew Chavalier's representation, admitted.

3.  Based upon Matthew Chavalier's representation, admitted.

4.  Admitted.

5.  It is admitted that the gift cards at issue are "open-loop" cards in that they may be used at merchants who accept Visa cards.  It is also admitted that the

---

[1] See Plaintiffs' Class Action Complaint.

gift cards at issue are credit card-sized plastics, upon which the Visa logo appears.  It is denied that the description in defendants' paragraph 5 is a complete description of the gift cards at issue.[2]

6. Denied as stated.  It is unknown to plaintiff what defendants mean by the "typical gift card sold by a retail business."  It is admitted that some retailers sell "closed-loop" cards.

7. Admitted in part.  See plaintiffs' Class Action Complaint and Motion for Class Certification for a full description of plaintiff's claims.

8. Admitted in part.  See defendants' paragraphs 9, 10, 11.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted in part.  However, it is categorically denied that said disclosure was adequate or conspicuous.[3]

13. Admitted in part.  However, it is categorically denied that said disclosure was adequate or conspicuous.[4]

14. Admitted in part.  However, it is categorically denied that said disclosure was adequate or conspicuous.[5]  It also must be stated that at no time did the defendants ever provide the purchase date of the card with the materials

---

[2] See defendants' "Show and Tell File."  See also the Declaration of Lise Moncilovich, attached as Exhibit "E" to Defendants' Motions for Summary Judgment.
[3] See Plaintiffs' Expert Reports, Exhibits "E" and "F."
[4] See Plaintiffs' Expert Reports, Exhibits "E" and "F."
[5] See Plaintiffs' Expert Reports, Exhibits "E" and "F."

designed to reach the card's recipient, rendering said disclosure meaningless.[6]

15. Admitted, but irrelevant. There may be several ways to ascertain the purchase date of any gift card sold by Commerce Bank or TD Bank; however, at no time did the defendants ever provide the purchase date of the card with the materials designed to reach the card's recipient.[7]  Moreover, at no time did defendants ever train their employees to advise gift card purchasers to inform their recipients what the purchase date of the card was.[8]

16. Denied. There is no support for the proposition that a gift card purchaser will remember the date on which he or she purchased a specific gift card. Moreover, at no time did defendants ever train their employees to advise gift card purchasers to inform their recipients what the purchase date of the card was.[9]

17. Denied. One must do more than simply call the 800 number on the back of the gift card. A recipient seeking the purchase date of the card must get into contact with a customer service representative on the phone and request the purchase date. It is also categorically denied that the defendants informed recipients that the phone number should be used to access the purchase date of any specific gift card.[10]

---

[6] See Matthew Chevalier Deposition, Exhibit "A" 72:19 to 73:9. See also the Declaration of Lise Moncilovich, attached as Exhibit "E" to Defendants' Motions for Summary Judgment.
[7] See Matthew Chevalier Deposition, Exhibit "A," 72:19 to 73:9.
[8] See James Grimmer Deposition, Exhibit "B," 81:8-15.
[9] See James Grimmer Deposition, Exhibit "B," 81:8-15.
[10] See training materials attached as Exhibits "I" to "L" of Defendants' Motions for Summary Judgment.

18. Admitted in part.  It is categorically denied that the defendants informed recipients that the website could be used to access the purchase date of any specific gift card.[11]

19. Admitted in part.  It is admitted that defendants advised recipients that gift cards could be registered.[12]  It is denied that this instruction could be described as "encouragement."  Moreover, defendants did not expect every recipient to register their gift cards.[13]

20. Denied as stated.  Recipients were instructed to register the cards in case the cards become lost and so they can check the balance of the card online, not so that they can obtain the purchase date of the card.[14]

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Denied.  It is admitted only that the defendants provided the terms and conditions within a pouch inside the greeting card which was placed in the gift box with the gift card.  It is categorically denied that this design "increased the likelihood that the statement of terms and conditions" would reach, or be discovered by ultimate gift card recipient.[15]

---

[11] *Id.*
[12] *Id.*
[13] See Matthew Chevalier Deposition, Exhibit "A," 78:15-18.
[14] See TD 000521-22, Exhibit "P" to Defendants' Motion for Summary Judgment.
[15] See Plaintiffs' Expert Reports, Exhibits "E" and "F."

26. Denied as stated.  It is admitted that it was the defendants' policy and procedure to present gift cards in the manner described by defendants' in their paragraph 26.  There may have been exceptions to this policy based on inventory issues.

27. Denied as stated.  The packaging used by defendants speaks for itself.  It is admitted that defendants has similar policies in place regarding the packaging of gift cards.[16]

28. Admitted in part.  However, it is categorically denied that this "FAQ" was adequate or conspicuous.[17]  Moreover, at no time did the defendants ever provide the purchase date of the card with the materials designed to reach the card's recipient.[18]

29. Admitted.

30. Admitted.

31. Denied as stated.  It is admitted that the defendants provided training.  It is categorically denied that this training was adequate.  See also response to ¶ 32.

32. Denied as stated.  It is admitted that training materials provided employees with information about defendant gift cards.  It is admitted that those training materials discussed the existence of a $2.50 monthly fee.  It is admitted that those training materials discussed the possibility of registering

---

[16] See Defendants' "Show and Tell File."
[17] See Plaintiffs' Expert Reports, Exhibits "E" and "F."
[18] See Matthew Chevalier Deposition, Exhibit "A," 72:19 to 73:9.  See also, plaintiffs' expert reports, Exhibits "E" and "F."

the gift cards.  It is admitted that those training materials mentioned an 800-number and website.  It is admitted that those training materials discussed that there is a Good Thru date on the card.  It is admitted that the training materials discussed that terms and conditions govern the card.  It is denied that the training materials fully or adequately discussed these terms and provisions of defendants' gift card program.  It is also denied that these training materials informed defendant employees to fully or adequately discuss these terms and provisions with gift card purchases.  It is specifically denied that these training materials instructed defendant employees to inform gift card purchasers to inform the ultimate recipients what the purchase date of the card was.[19]

33. Admitted.

34. Denied.  Plaintiff is without information or belief to determine what defendants desired the word free to convey.

35. Denied.  The press releases did not explain that "free" meant no purchase fee. The press release cited by defendants explains that "no purchase fee" means "no purchase fee."[20]  They do not explain the meaning of "free."

36. Admitted.

37. Denied as stated.  In store posters usually contained the message "**FREE!**" in large, bolded, capitalized font in a prominent location, and then a "fine print"

---

[19] See Exhibits "I" to "L" of Defendants' Exhibits to their Motions for Summary Judgment.  See also James Grimmer Deposition, Exhibit "B," 81:8-15.

[20] TD000217, Exhibit "B" to Defendants' Motion.  Press Release entitled, "Commerce Bank Introduces Visa Gift Card with No Purchase Fee."

message in the smallest font on the poster, at the bottom of the poster that there was "No purchase fee."[21]

38. Admitted.

39. Admitted.

40. Admitted.

41. Denied as stated.  Plaintiffs' Class Action Complaint is a complete document which speaks for itself.[22]

42. Admitted in part.  It is admitted that the language quoted by defendants in paragraph 47 appears in Mr. Mann's interrogatory responses.  Any improper inference from that language is categorically denied.  However, at deposition, Mr. Mann testified more specifically regarding his gift card transactions.[23]

43. Admitted.

44. Admitted in part.  It is admitted that the language quoted by defendants in paragraph 44 appears in Mr. Mann's interrogatory responses.  Any improper inference from that language is categorically denied.

45. Denied.  Mr. Mann's interrogatory responses speak for themselves.

46. Plaintiff is without sufficient information to admit or deny this averment. Therefore, it must be denied as such.

47. Admitted.

---

[21] See TD00249 in Tab 31 to Lise Moncilovich Declaration, attached as Exhibit "E" to Defendants' Motion.  See also *Id.* at TD 000252 in Tab 36, TD00200 in Tab 38, and TD00201 in Tab 41.
[22] See Plaintiffs' Class Action Complaint.
[23] See Mann Deposition, Exhibit "G."

48. Denied as stated.  It is admitted that the cards identified in defendants' paragraph 47 were not used or registered by a recipient.

49. Denied as stated.  It is admitted that dormancy fees did not accrue on the cards identified in defendants' paragraph 47 until December 2009.

50. Admitted.

51. Denied as stated.  It is admitted that dormancy fees did not accrue on the cards identified in defendants' paragraph 47 until December 2009.

52. Denied as stated.  The cards identified in defendants' paragraph 47 were purchased prior to February 2009, so Bradley Mann could not have altered his conduct.  Moreover, Mr. Mann testified that he did not know whom the cards were given to, so he could not alert the card recipients.[24]

53. Denied as stated.  It is admitted that according to defendants' records the cards identified in defendants' paragraph 47 have not been used to make any purchases and fees have continued to accrue.

54. Based on Debra Colello's Declaration, admitted.

55. Admitted.

56. Admitted.

57. Admitted.

58. Denied.  Mr. Mann testified that he, his wife and Ms. Daus went to the bank branch together to purchase the cards and that his wife and Ms. Daus handled the transaction.[25]

---

[24] Exhibit "G" at 44:1-3.
[25] Id. at 26:1-17.

59. Denied as stated.  Robynn Mann testified that she did not recall purchasing gift cards from TD Bank in 2008 and that she wasn't present when Doris Daus, her friend, purchased gift cards.[26]

60. Admitted.

61. Admitted.

62. Denied as stated.  Plaintiff is without information to admit or deny this averment, so it must be denied as such.

63. Denied.  Mr. Mann testified that he never learned that the recipients of his cards could not use the full value of the cards.[27]  He also testified that he could not remember who the recipients of his cards were.[28]

64. Admitted.

65. Admitted.

66. Denied as stated.  Mr. Mann testified that he saw a newspaper advertisement that discussed "free gift cards," but he could not recall the exact wording.[29]

67. Admitted.

68. Denied as stated.  Mr. Mann's deposition testimony speaks for itself and he never testified that "free" meant "no purchase fee."

69. Admitted.

---

[26] See  Robyn Mann Deposition Transcript, Exhibit "DD" to Defendant's Motion at 13-16.
[27] Exhibit "G" at 59:13-17.
[28] *Id.* at 44:1-3.
[29] *Id.* at 32:24 to 33:23.

70. Denied as stated.  Mr. Mann's deposition testimony speaks for itself.  He further testified, "Well, I purchased gift cards which I later learned would incur fees that I wasn't aware of.  And being that my wife had given these as gifts, it's embarrassing that if someone were to use them and they don't get the full value of what we purchased, it's embarrassing and upsetting."[30]  He also testified, "And someone was talking about they had heard that there were gift cards that were incurring all of these sorts of fees.  And through that discussion we had mentioned that I had just purchased these gift cards, and we were so excited because they were free, no-fee gift cards."[31]

71. Admitted.

72. Admitted.

73. Denied as stated.  Mr. Mann testified that he could not remember who the recipients of his cards were.[32]

74. Admitted.

75. Admitted.

Respectfully submitted,

SILVERMAN & FODERA, PC

Leonard V. Fodera, Esquire
Michael P. Lalli, Esquire
SILVERMAN & FODERA, P.C.
1835 Market St. – Suite 2600
Philadelphia, PA 19103

*Attorneys for Plaintiffs*

Dated: 9|17|10

---

[30] Exhibit "G" at 59:4-12.
[31] *Id.* at 46:10-18.
[32] *Id.* at 44:1-3.

SILVERMAN & FODERA, PC
Leonard V. Fodera, Esquire                    *Attorneys for Plaintiff*
Identification No.: 57203
Michael P. Lalli, Esquire
Identification No.: 203201
1835 Market St. – Suite 2600
Philadelphia, PA 19103

---

| | | |
|---|---|---|
| BRADLEY MANN, at el. | : | |
| | : | |
| | : | |
| v. | : | No.: 1:09-cv-01062-RBK-AMD |
| | : | |
| TD BANK, N.A., et al. | : | |
| | : | |

---

## BRADLEY MANN'S  STATEMENT OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF HIS RESPONSE TO DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Bradley Mann, by and through his undersigned counsel, hereby

offers the following Statement of Undisputed Material Facts:

1.  It is defendants' position that it is important that the recipients of defendant-issued gift cards are fully informed of the terms and conditions of the card.[1]

2.  It is defendants' position that it is important that the purchasers of defendant-issued gift cards are fully informed of the terms and conditions of the card.[2]

3.  Defendants' employees are instructed to show gift card purchasers the terms and conditions and inform purchasers that terms and conditions exist.[3]

---

[1] Deposition of Matthew Chevalier, Exhibit "A" at 71:17-19.
[2] *Id.* at 71:9-11.
[3] *Id.* at 70:16-23.

4. Defendants' employees are not instructed to read the terms and conditions of the gift card to purchasers.[4]

5. The issue date of defendants' gift cards have never been included on defendants' gift cards themselves.[5]

6. The issue date of defendants' gift cards have never been included in the terms and conditions of the gift cards.[6]

7. The defendants' have never provided the issue date of the gift card in any of the materials that are designed to reach the recipient of the gift card.[7]

8. Dormancy fees could be assessed on a card prior to the card's "Good Thru" date.[8]

9. A card's "Good Thru" date and dormancy fees have nothing to with each other at all.[9]

10. Not one of defendants' advertisements ever contained any information about the monthly maintenance, or dormancy fee.[10]

11. According to defendants, when the word "free" was used in advertisements or marketing material, it doesn't mean "free, no fees at all," but it rather means "free, no purchase fee."[11]

12. The transaction in which a customer purchases a gift card, from defendants' perspective, is uniform throughout the branches.[12]

---

[4] *Id.* at 70:13-15.
[5] *Id.* at 72:23-24.
[6] *Id.* at 73:3-9.
[7] *Id.*
[8] *Id.* at 85:22 to 86:3.
[9] *Id.* at 86:1-3.
[10] *Id.* at 93:8-17.
[11] *Id.* at 101:15-18.

13. One of the goals of employee training regarding the gift card purchase transaction is to ensure the transaction is uniform throughout the branches.[13]

14. At no time, did the defendants ever instruct their employees to advise gift card purchasers to inform the recipient the issue date of the gift card.[14]

15. James Grimmer could not recall whether at any time during the gift card transaction, a bank employee would directly tell a gift card purchaser that a $2.50 monthly fee can begin accruing after a certain amount of months, even though he is the person who would know that information.[15]

16. The defendants make a profit on their gift card programs.[16]

17. According to James Grimmer, it would easier for the consumer if the issue date were provided on the gift card itself.[17]

18. James Grimmer is aware of no reason why defendants never placed a sticker, which stated the issue date of the card, on the gift cards.[18]

19. Commerce bank created a video in August of 2006 related to gift cards that was seen by retail store employees.[19]

20. This August 2006 video was used as a training tool.[20]

---

[12] *Id.* at 82:3-5.
[13] *Id.* at 106:3-8.
[14] Deposition of James Grimmer, Exhibit "B" at 81:8-15.
[15] *Id.* at 91:17 to 92:1.
[16] *Id.* at 121:14-17.
[17] *Id.* at 131:13-16.
[18] *Id.* at 131:17-20.
[19] *Id.* at 74:14 to 75:13.
[20] *Id.* at 76:9-12.

21. This August 2006 video was used as a knowledge base for the employees about gift card and selling gift cards.[21]

22. This August 2006 video would have been shown in every Commerce Bank branch at one time or another.[22]

23. This August 2006 video contains a mock sale of a Commerce Bank gift card to a customer.[23]

24. Nowhere in the mock sale portion of the video does the "CSR" inform the "customer" that there is a $2.50 monthly dormancy fee.[24]

25. All of defendants' gift cards sold in branches are provided with packaging that includes a box with an elasticized ribbon.[25]

26. All of defendants' packaging for gift cards sold in branches contains a tri-fold greeting card.[26]

27. One portion of this tri-fold greeting card allows the purchaser to write information about the card, including the "from," "to," and "amount."[27]

28. There has never been a line on the tri-fold greeting card which was labeled "purchase date" or "issue date" or words to that effect.[28]

29. The terms and conditions of the card are collated into the tri fold greeting card before the greeting cards are shrink-wrapped into groups of twenty-five.[29]

---

[21] *Id.* at 150:11-16.
[22] *Id.* at 76:19-21.
[23] *Id.* at 77:13-24.
[24] *Id.* at 150:21 to 151:1.
[25] See Defendants' "Show and Tell File."
[26] *Id.*
[27] *Id.*
[28] *Id.*

30. These shrink-wrapped packages of twenty-five tri fold greeting cards are then sent out to the individual branches.[30]

31. The terms and conditions of the gift cards cannot be read until a person opens the gift-box, unfolds the greeting card, and pulls the terms and conditions out of the pouch.[31]

32. No customer was ever afforded the opportunity to negotiate changes to the terms and conditions of the gift cards with defendants.

33. Defendants can point to no evidence that a customer ever was given the opportunity to negotiate changes to the terms and conditions of the gift cards.

34. Prior to November of 2007, not all of defendants' gift cards contained a disclosure on the card itself about the dormancy, or maintenance fee.[32]

35. The advertisement bates-stamped TD000196 is a window cling used by Commerce Bank in connection with its gift card program in 2006 at a time when Commerce Bank was charging a dormancy fee.[33]

36. The advertisement bates-stamped TD000196 states, "FREE Gift Cards" in large block lettering.  At the bottom of the ad is a disclosure in very small font, which reads, "Commerce account required.  No purchase fee."[34]

---

[29] Deposition of Lise Moncilovich, Exhibit "C" at 102:24 to 104:7.
[30] *Id.*
[31] See Defendants' "Show and Tell File."
[32] Declaration of Lise Moncilovich, attached as Exhibit "E" to Defendants' Motions for Summary Judgment.
[33] *Id.* at ¶10
[34] *Id.* at Tab 34.

37. The advertisement bates-stamped TD000249 is a poster used by Commerce Bank in connection with its gift card program in 2006 at a time when Commerce Bank was charging a dormancy fee.[35]

38.   The advertisement bates-stamped TD000249 states, "Perfect for Any Occasion! – The Commerce Bank Visa Gift Card" in large block lettering.  It then has three bullet points, the first of which states "Free!"  At the bottom of the ad is a disclosure in very small font, which reads, "Commerce account required.  No purchase fee."[36]

39. The advertisement bates-stamped TD000252 is a poster used by Commerce Bank in connection with its gift card program in 2006 at a time when Commerce Bank was charging a dormancy fee.[37]

40. The advertisement bates-stamped TD000252 states, "The Perfect Gift" and then in a bubble, states "FREE!"  At the bottom, left-hand corner of the ad is a disclosure in very small font, which reads, "Commerce account required.  No purchase fee."[38]

41. The advertisement bates-stamped TD000201 is a poster used by TD Bank in connection with its gift card program at a time when TD Bank was charging a dormancy fee.[39]

---

[35] *Id* at ¶10.
[36] *Id* at Tab 31.
[37] *Id* at ¶10.
[38] *Id* at Tab 36.
[39] *Id.* at ¶10.

42. The advertisement bates-stamped TD000201 states, "FREE!" at the top, then states "The Perfect Gift!"  The poster contains the "no purchase fee" disclaimer in very small font on its bottom-right.[40]

43. Matthew Chevalier testified about the advertisement bates-stamped TD000201, stating:

> Q.    I see at the top, right there's a word.  I don't know if it's highlighted or just has a background behind it.  But it says "free," exclamation point.  And it is all capitals.  Do you see that?
> A.    Yes.
> Q.    What does that mean?
> A.    So it means that there is no cost to purchase the card.    ....
> Q.    Is there anything about a purchase fee on this?
> A.    I see on the bottom right-hand corner, it says no purchase fee.[41]

44. Lise Moncilovich testified about the advertisement bates-stamped TD000249, stating:

> Q.    Can you tell me who decided to use the word free in this advertisement?
> A.    I don't know who made the final decision.  The reference was always free to purchase, and obviously, again, it goes back to the key concepts, there are certain elements we always wanted to communicate, and depending on the medium that we would use, some words would live greater than other words would live.  This is obviously an element that they wanted to communicate on this particular piece, because a poster is a very -- it's a walk-by kind of signage, so they want to get an immediate attention grabber.
> Q.    So when you say it's a walk-by kind of signage, what you mean by that is a person will walk in, see the sign and then walk past it?
> A.    Depending on where it's located in the store, they would walk right past it – they could walk right past it if they were going to the teller line or if they were going to the customer service area.
> Q.    So sort of like a quick hitter –
> A.    It's a quick hit.[42]

---

[40] *Id.* at Tab 41.
[41] Exhibit "A" at 96-97.

45. According to defendants' records, Bradley Mann purchased two $25 gift cards from TD Bank on November 22, 2008.[43]

46. Starting in December of 2009, the defendants began assessing monthly dormancy fees of $2.50 against each of these cards.[44]

47. As of August 25, 2010, the total amount of dormancy fees assessed against each of these cards was $22.50.[45]

48. Therefore, on November 22, 2008 Bradley Mann purchased two cards for a total purchase value of $50, but as of August 25, 2010 all but $5.00 has been consumed by monthly dormancy fees.

49. When Mr. Mann was at a branch of TD Bank on November 22, 2008, he saw advertisements for gift cards prior to purchasing them.[46]

50. The advertisement said "free gift cards, inquire within, or something to that effect."[47]

51. This advertisement affected Mr. Mann's decision to buy the gift cards.[48]

52. Prior to entering the branch on November 22, 2008, Mr. Mann saw advertisements for TD Bank gift cards in newspapers that "discussed free gift cards."[49]

---

[42] Exhibit "C" at 72-73.
[43] Exhibit "F" to Defendants' Motion for Summary Judgment at paragraph 16(a-b).
[44] *Id.* at Tab 9-10.
[45] Exhibit "CC" to Defendants' Motion for Summary Judgment at 2.
[46] Exhibit "G" at 31:12-19.
[47] *Id.* at 32:3-15.
[48] *Id.* at 37:11-15.
[49] *Id.* at 33:19-23.

53. When Mr. Mann purchased the two gift cards in November of 2008, he confirmed with the TD Bank customer service representative that the cards were free.[50]

54. When Mr. Mann purchased the two gift cards in November of 2008, the TD Bank customer service representative did not alert him to the fact that terms and conditions govern the cards.[51]

55. The two gift cards Mr. Mann purchased from TD Bank on November 22, 2008 were gifts, "relative's birthdays and whatnot."[52]

56. After purchasing the cards, Mr. Mann gave them to his wife to give out as gifts.[53]

57. Mr. Mann does not who his wife gave the cards to.[54]

58. At the time he purchased the gift cards, Mr. Mann did not notice that the gift box contained any written materials, i.e. terms and conditions.[55]

59. A week or two after purchasing the gift cards, Mr. Mann heard about the possibility of fees on them, so he "pulled apart the packaging" and found "some additional papers" that were either "behind the gift cards or somewhere in the packaging."[56]

---

[50] *Id.* at 42:5-13.
[51] *Id* at 65:23 to 67:1.
[52] *Id.* at 31:12 to 32:2.
[53] *Id.* at 43:15 to 44:3.
[54] *Id.* at 43:15 to 44:3.
[55] *Id.* at 45:10-19.
[56] *Id.* at 47:2-7.

60. Bradley Mann testified that he was not aware of the fees that could be charged to the gift cards he purchased.[57]

61. Bradley Mann testified that TD Bank should have a "more clear disclosure of any and all fees…that would be incurred by purchasing or maintaining" a gift card.[58]

62. Bradley Mann testified that the signage used by TD Bank should be more clear.[59]

Respectfully submitted,

Leonard V. Fodera, Esquire
Michael P. Lalli, Esquire
SILVERMAN & FODERA, P.C.
1835 Market St. – Suite 2600
Philadelphia, PA 19103

Dated: _____9|17|10_____          *Attorneys for Plaintiffs*

---

[57] *Id.* at 59:4-6.
[58] *Id* at 62:15-20.
[59] *Id.* at 68:4-12.

**SILVERMAN & FODERA, PC**
Leonard V. Fodera, Esquire
Identification No.: 57203
Michael P. Lalli, Esquire
Identification No.: 203201
1835 Market St. – Suite 2600
Philadelphia, PA 19103

*Attorneys for Plaintiff*

---

|  |  |  |
|---|---|---|
| **BRADLEY MANN**, at el. | : | |
| | : | |
| v. | : | No.: 1:09-cv-01062-RBK-AMD |
| | : | |
| **TD BANK, N.A.**, et al. | : | |

---

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON BRADLEY MANN'S CLAIMS

Leonard V. Fodera, Esquire
Michael P. Lalli, Esquire
SILVERMAN & FODERA, P.C.
1835 Market St. – Suite 2600
Philadelphia, PA 19103

Michael E. Berman, Esquire
MICHAEL E. BERMAN, P.C.
310 Riverside Blvd. – Suite 3I
Long Beach, NY 11561

Dated: ___9|17|0___

*Attorneys for Plaintiffs*

## I.   INTRODUCTION

On August 27, 2010, defendants filed the instant Motion for Summary of

Judgment on the claims of plaintiff, Bradley Mann.[1]  The defendants argue that

there are no genuine issues of material fact in this matter and that summary

judgment is proper on Mr. Mann's New Jersey Consumer Fraud Act, breach of

contract and unjust enrichment claims.[2]  The defendants further argue that Bradley

Mann lacks standing under Article III of the Constitution to seek damages, as well

as declaratory and injunctive relief.[3]

For the reasons set forth below, defendants' attempt at obtaining summary

judgment in a case that clearly contains genuine issues of material fact fails.  Based

upon the record in this case and the high standard required for summary judgment,

this motion must be denied.

Additionally, plaintiff incorporates his response to defendants' statement of

undisputed material fact, as well as plaintiff's statement of undisputed material

fact as if set forth fully herein.

## III.   SUMMARY JUDGMENT STANDARD

The standard for summary judgment under Federal Rule of Civil Procedure

56 is well established and the Third Circuit has stated it as follows:

> Summary judgment is proper if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and
> that the moving party is entitled to a judgment as a matter of law.

---

[1] See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment on
Bradley Mann's Claims (Doc. 68).
[2] Doc. 68 at 9-13.
[3] *Id.* at 14-17.

> Once the moving party comes forward and identifies those portions of the pleadings, depositions, answers to interrogatories, and admissions in file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact, the non-moving party must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial. In evaluating whether the non-moving party established each element of its case, the court must resolve all reasonable inferences in favor of the non-moving party. Credibility determinations are not the function of the judge; instead the non-movant's evidence must be credited at this stage.[4]

Similarly, your Honor summarized the applicable standard as follows:

> Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[5]

Moreover, "the burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment."[6] "Once the moving party satisfies this initial burden, the nonmoving party... "must make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."[7] In other words, the non-moving party need only show he can make a *prima facie* case on each claim.[8]

---

[4] *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 (3d Cir. Pa. 1994)
[5] *Fisher v. United States DOJ*, 2008 U.S. Dist. LEXIS 38925 (D.N.J. May 9, 2008) (internal citations omitted)
[6] *Id.* (internal citations omitted)
[7] *Id.* (internal citations omitted)
[8] *Williams v. Wells Fargo Fin. Acceptance*, 564 F. Supp. 2d 441, 445 (E.D. Pa. 2008) (internal citations omitted)

IV.   **FACTS AND ARGUMENT REVEALING THAT ENTRY OF SUMMARY JUDGMENT AS TO BRADLEY MANN'S CLAIMS IS IMPROPER.**

An examination of the record, in a light most favorable to the non-moving party, plaintiff herein, reveals that an entry of summary judgment in favor of defendants as to Bradley Mann's NJCFA, breach of contract and unjust enrichment claims would be patently improper.  Genuine issues of material fact clearly exist which are relevant to all claims; therefore, this motion must be denied.  Moreover, Mr. Mann has standing under Article III of the Constitution to claim damages, as well as injunctive and declaratory relief.

A.  **Summary Judgment must be denied on Bradley Mann's Claim under the New Jersey Consumer Fraud Act**

The defendants are not entitled to summary judgment on Bradley Mann's claim under the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-2 et seq.)("CFA").  The record contains probative evidence establishing more than a *prima facie* case for this claim.

The New Jersey Consumer Fraud Act "represents a legislative broadside to unsavory commercial practices" and thus serves to protect consumers in New Jersey.[9]  "The reach of the CFA's civil cause of action and remedies purposely is broad. By its explicit and unqualified terms, the CFA outlaws '[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing,

---

[9] *Real v. Radir Wheels, Inc.*, 198 N.J. 511, 514 (N.J. 2009)

3

concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise."[10]

The CFA provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.[11]

In order to state a valid claim under the CFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."[12]

Moreover, plaintiff need not prove traditional reliance on the defendants' conduct. "While it is certainly true that the element of traditional reliance required to be pleaded and proven in a common law fraud or misrepresentation case, need not be proven in order to recover for damages pursuant to the CFA, plaintiffs must nonetheless plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained."[13]

The defendants argue that Mr. Mann cannot bring forward a claim under the New Jersey Consumer Fraud Act for two reasons: (1) there is no evidence that Mr.

---

[10] *Real v. Radir Wheels, Inc.*, 198 N.J. 511, 515 (N.J. 2009).
[11] N.J.S.A. § 56:8-2.
[12] New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App.Div. 2003)
[13] New Jersey Citizen Action, 367 N.J. Super. at 15 (internal citations ommitted).

Mann suffered an ascertainable loss, and (2) there is no evidence or causation.[14]

For the reasons stated below, these arguments fail.

> **(1) There is sufficient evidence that Mr. Mann suffered an ascertainable loss.**

The defendants argue that there is no evidence that Bradley Mann suffered an ascertainable loss because he gave away the cards he purchased prior to the fees being deducted, and therefore, no longer owned the cards.[15] This argument simply ignores the record and relevant case law. The record clearly supports a *prima facie* finding of ascertainable loss suffered by Bradley Mann.

New Jersey law is clear regarding the definition of ascertainable loss required under the CFA:

> Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . When the product fails to measure up [to reasonable expectations based on the representations made], the consumer has been injured; he has suffered a loss. [H]e has lost the benefits of the product which he was led to believe he had purchased.[16]

In other words, "[t]o satisfy the 'ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained."[17]

There is ample evidence that Bradley Mann received something different from that which he bargained, and thus suffered ascertainable loss. There is no

---

[14] Doc. 68 at 9-12.
[15] Doc. 68 at 10.
[16] Miller v. American Family Publishers, 284 N.J. Super. 67, 89 (Ch.Div. 1995)
[17] *Id.*

dispute that Mr. Mann purchased two $25 gift cards from TD Bank in November of 2008.[18]  There is also no dispute that starting in December of 2009, the defendants began assessing monthly dormancy fees of $2.50 against each of these cards.[19]  As of August 25, 2010, the total amount of dormancy fees assessed against each of these cards was $22.50.[20]  Therefore, Mr. Mann purchased two gift cards for a total value of $50.00, but as of August 25, 2010 only $2.50 can be used to purchase items through each card.

Mr. Mann purchased these gift cards for "relative's birthdays" and as a result of defendants' conduct, was not aware that fees could be charged to the gift cards he purchased.[21]

Therefore, there can be no real dispute that Mr. Mann did not get what he bargained for.  Based on defendants' advertisements and inadequate disclosures, Mr. Mann bargained for two gifts worth $25 each, but as of August 2010 he received two gifts worth only $2.50 each.  The fact that Mr. Mann gave these cards away as gifts does not change the fact that he did not get what he bargained for, and thus, suffered ascertainable loss.

### (2) There is evidence of causation.

The defendants' second argument regarding Mr. Mann's CFA claim is that he cannot show a causal relationship between the collection of 90% of his cards' value

---

[18] Exhibit "F" to Defendants' Motion for Summary Judgment at ¶ 16(a-b).
[19] Id. at Tab 9-10.
[20] Exhibit "CC" to Defendants' Motion for Summary Judgment.
[21] Bradley Mann Deposition, Exhibit "G" at 31:12 to 32:2 and 58:4-6.

in dormancy fees and the alleged wrongdoing of defendants.[22]   However, the record

supports more than a *prima facie* showing on this issue as well.

The $45.00 dormancy fee which constitutes Mr. Mann's ascertainable loss

was a direct result of the failure to disclose said fees to Mr. Mann.  His testimony is

unequivocal on this point.  Mr. Mann purchased the cards because he saw an

advertisement that said "free gift cards" or something to that effect.[23]   When Mr.

Mann purchased the cards, he confirmed with the TD Bank representative that the

cards were free.[24]   When Mr. Mann purchased the cards, the TD Bank

representative did not alert him to the fact that the cards were governed by terms

and conditions.[25]   At the time of purchase, Mr. Mann did not notice that the gift

card box contained any written materials.[26]   It was only after he heard about the

possibility of fees from a friend that he went back through the materials, "pulled

apart the packaging" and found additional papers that were "behind the gift cards

or somewhere else in the packaging."[27]   Because of defendants conduct, including

their advertisements and inadequate disclosures, Bradley Mann was not aware that

dormancy fees could be charged to the cards he was purchasing.[28]

---

[22] Doc. 68 at 11.
[23] Exhibit "G" at 32:3-15 and 37:11-15.
[24] *Id.*  at 42:5-13.
[25] *Id.* at 65:23 to 67:1.
[26] *Id.* at 45:10-19.
[27] *Id.* at 47:2-7.
[28] *Id.* at 59:4-6.

Moreover, Bradley Mann has expert support for the propositions that defendants' disclosures are inadequate and that their advertisements are misleading.[29]

The defendants argue that Mr. Mann cannot show the cards incurred a dormancy fee as a result of a failure to disclose the fees because he filed his lawsuit prior to fees being assessed.[30]  They argue that he could have acted to avoid the fees.[31]  However, this argument holds no water when one looks at Mr. Mann's testimony with any scrutiny.  He testified specifically that he did not know who his wife gifted the cards to, and therefore, could take no action to alert this unknown person to the presence of dormancy fees.[32]

The defendants also argue that Mr. Mann cannot show the cards incurred dormancy fees because of misleading advertisements based on the date of his filing the lawsuit as well.[33]  However, once again, this argument fails.  As stated above, Mr. Mann purchased the gift cards with the mindset that no fees could be assessed against them, partly due to the advertisements.  His wife gave them away as gifts to parties unknown to Brad.  Therefore, he could take no action to alert these recipients about the fees.

The record contains genuine issues of triable fact on this issue of causation, and therefore, summary judgment is patently improper.

---

[29] See Exhibits "E" and "F"
[30] Doc. 68 at 11-12.
[31] *Id.*
[32] Exhibit "G" at 43:15 to 44:3
[33] Doc. 68 at 12.

Because Bradley Mann has set forth at least a *prima facie* case regarding damages and causation, and because there exist genuine issues of material fact that must be tried, defendants' motion for summary judgment on his CFA claim must be denied.

### B. Summary Judgment must be denied on Bradley Mann's Breach of Contract Claim.

In addition to arguing that Bradley Mann cannot survive summary judgment on his claim under the CFA, the defendants argue that his claim for breach of contract likewise must be dismissed.[34] The bank states that Mr. Mann cannot prove damages or causation as a result of any breach of contract.[35]

Plaintiff's breach of contract action is based on the fact that the banks failed to properly disclose their gift cards could be subject to dormancy fees by failing to disclose the information conspicuously and clearly.  In contracts of adhesion, such as the ones in this matter, terms and conditions which contain fees and costs to consumers not printed in a conspicuous manner may be unenforceable.[36]  Because defendants' disclosures regarding fees were contained in contracts of adhesion and were not printed in a conspicuous manner, they should be held unenforceable.  The collection of fees pursuant to those inadequate disclosures constitutes a clear breach of contract and fees assessed by the bank pursuant to those disclosures constitute damages as a result of said breach.

---

[34] Doc. 68 at 12-13.

[35] Doc. 68 at 12.

[36] *Metalized Ceramics for Electronics v. National Ammonia Company*, 663 A.2d 762, 765 (Pa. Super. 1995).

Bradley Mann sets forth at least a *prima facie* case for breach of contract in this matter.  In order to prevail under this theory, he must only show he lacked a meaningful choice in accepting the challenged provision and the challenged provision must "unreasonably favor" the party asserting it.[37]  He has proffered expert testimony regarding the adhesive, non-negotiable nature of the contract, as well as the unconscionable nature of the terms.[38]  Additionally, as outlined above, the facts of his transaction demonstrate that the terms of the gift cards were not conspicuously disclosed.[39]

The collection of $45.00 on the cards Mr. Mann purchased, pursuant to the unconscionable provisions of the contract not only constitutes the breach of the contract, but also the damages that resulted directly therefrom.  Summary judgment is simply not proper as the record supports genuine issues of triable facts do exist regarding damages and causation.

---

[37] *Witmer*, 496 Pa. at 551.

[38] Tomas J. Norton, CFE June 11, 2010 Report, Exhibit "E," and Stephen B. Wilcox, Ph.D. June 10, 2010 Report, Exhibit "F."  Mr. Norton described the situation as "These terms and conditions represent a non-negotiable agreement that is offered to the consumer on a 'take it or leave it' basis." And "In those versions of the terms and conditions that do disclose the monthly service fee, the disclosure itself is the same size and type font as the provisions of the terms and conditions around it.  The disclosure related to fees is not bolded, or set off in any way from the provisions around it." Norton criticized the banks' following conduct: "(a) "Using extremely fine print," (b) "hiding the terms in an inconspicuous pouch in the greeting card that accompanies the gift card, and (c) "taking unfair advantage of the Customer/Recipient of the Cards since there is virtually no transparency regarding the fee structure in the material provided with the Gift Cards."
Dr. Wilcox also criticized the program, stating "A recipient should not have to search for terms and conditions which govern a gift card.  The banks at issue packaged the terms and conditions inside a gift box, within a greeting card that must be opened, and inside a pouch within the greeting card." He also stated, "Based on the information provided to the purchasers, "there was no reason for purchasers to expect fees and no information provided to the purchasers to alert them to the presence of fees."

[39] As outlined above and in Plaintiff's Statement of Material Facts, he was not alerted that terms and conditions govern the card, he confirmed with the TD Bank representative that the cards were free, at the time of purchase he did not notice any written materials in the gift box, he had to "pull apart the packaging" to find the additional materials, he was not aware the cards were subject to fees at the time of purchase.

### C. Bradley Mann's claim for Unjust Enrichment does not fail as a matter of law.

The defendants claim that Mr. Mann cannot set forth an unjust enrichment claim because there is no evidence he incurred a dormancy fee. As stated above, Mr. Mann has offered evidence that he did suffer a loss and there is no dispute that the cards he purchased were assessed fee in a total amount of $45.00.

To state a claim for unjust enrichment, Mr. Mann must show that the "defendant received a benefit and the retention of that benefit without payment would be unjust."[40] Here, the defendants assessed $45.00 in dormancy fees because of inadequate disclosures and misleading advertising. It would be patently unjust for the defendants to retain fees which were not properly disclosed.

The defendants also wrongly claim that because Mr. Mann has set forth a claim based on a valid and binding contract, his unjust enrichment claim must be precluded.[41] While the plaintiff cannot recover under both theories, he may assert them in his complaint and present both to the jury.[42]

It is well-established that a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. Under this maxim, New Jersey courts have allowed both breach of contract and unjust enrichment theories to be presented to the jury:

> We conclude that a plaintiff who has attempted to prove both breach of contract and unjust enrichment need not choose which one will go to the jury, as long as there is sufficient evidence as to both. Under proper instructions from the judge, the jury may decide which of the two was proved, and

---

[40] *Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 310 (3d Cir. 1982).
[41] Doc. 68 at 13-14.
[42] *Caputo v. Nice-Pak Products, Inc.,* 300 N.J. Super. 498 (App.Div. 1997).

plaintiff will be able to recover under one of the theories. It is only recovery under inconsistent theories that is not permitted.[43]

So while plaintiff may not recover on both breach of contract and unjust enrichment theories, he may present them both to a jury. Therefore, the dismissal of plaintiff's unjust enrichment claim at this point is premature.

### D. Bradley Mann does not lack standing to bring a claim for damages or for injunctive or declaratory relief.

In addition to arguing that Bradley Mann cannot prevail on his CFA, breach of contract and unjust enrichment claims, the defendants argue that he does not meet the standing requirement under Article III of the Constitution.[44] For the same reasons their previous arguments fail regarding substantive claims, this bootstrapped standing argument also fails.

### (1) Mr. Mann does have Article III standing to bring a claim for damages.

Succinctly put, the defendants argue Bradley Mann lacks standing because he cannot show damages and because the fees assessed against the cards he purchased did not accrue until after he filed this lawsuit.[45]

In order to show standing, Bradley Mann must establish "(1) an injury in fact (*i.e.,* a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.,* a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is 'likely' and not 'merely 'speculative' that the plaintiff's injury will be remedied by the relief

---

[43] *Caputo,* 300 N.J. Super at 504
[44] Doc. 68 at 15.
[45] *Id.*

12

plaintiff seeks in bringing suit)."[46]  The loss and causation of Mr. Mann's harm have been fully explained above so there is no need to repeat here in response to this overt bootstrapping by defendants.  Redressability is not an issue in this matter as plaintiff's injury would clearly be remedied by a refund of the dormancy fees unlawfully collected.

Additionally, the time at which fees began accruing is irrelevant to Mr. Mann's standing, as he had purchased the cards and they were given away at the time of filing his complaint.  In order to have standing, one must show "concrete or actual" or "imminent" injury.[47]  Here, as stated above, Mr. Mann purchased a TD Bank gift card which would be subject to dormancy fees that he, due to defendants' conduct, was not aware of.  Therefore, Mr. Mann did not receive the benefit for which he bargained, and thus suffered ascertainable loss at the time of the purchase of the gift cards.  Moreover, because the gift cards were subject to dormancy fees, any collection of those fees would constitute loss as well.  It is readily apparent, due to the lack of adequate disclosures related to the dormancy fees, why the collection of dormancy fees on Mr. Mann's cards could be considered an "imminent" injury.[48]

The bootstrapped standing argument, which is simply a reiteration of defendants' previously debunked damages and causation arguments, fails. Summary judgment must, therefore, be denied.

---

[46] *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009)
[47] *Nova Health Sys. V. Gandy*, 416 F.3rd 1149, 1154 (10th Cir. 2005).
[48] This is further supported that approximately 1 in 3 cards sold in New Jersey by defendants during the class period were subject to dormancy fees.  See Exhibit "I," Defendants' Supplemental Interrogatory Responses.

(2) **Bradley Mann does have Article III standing to bring a claim for declaratory or injunctive relief.**

Lastly, defendants argue that Mr. Mann does not have standing to request declaratory or injunctive relief because he cannot "establish a real and immediate threat that [he] would be again the victim" of the defendants' conduct.[49]  This argument categorically fails.

The defendants state that there is no evidence Mr. Mann will purchase a defendant-issued gift card in the future.[50]  However, this statement is misleading as Mr. Mann could suffer damages if he were to receive a card in the future.  Mr. Mann cannot predict what gifts he will receive in the future and it is ludicrous for us to expect that he, the court, or counsel have that ability.  There is no evidence that Mr. Mann will <u>not</u> receive a defendant-issued card in the future.

Moreover, his knowledge of the fees at present time does not render his claims for injunctive or declaratory relief invalid.  As previously established, his knowledge does not affect his breach of contract claim, and thus would not affect his standing to obtain injunctive or declaratory relief.  The defendants' conduct (i.e., charging fees based on unenforceable contractual provisions) will continue unless this court issues injunctive or declaratory relief.  That is more than conjecture, it is fact.

## V.   CONCLUSION

There exist genuine issues of triable, material fact as to Bradley Mann's CFA, breach of contract and unjust enrichment claims.  He has set forth enough evidence

---

[49] Doc. 68 at 16.
[50] *Id.* at 16.

to establish at least a *prima facie* case on all three claims.  Moreover, he has demonstrated Article III standing to bring these claims.  Summary judgment is improper and defendants' motion should be denied.

Respectfully submitted,

SILVERMAN & FODERA, PC

_____
Leonard V. Fodera, Esquire
Michael P. Lalli, Esquire
SILVERMAN & FODERA, P.C.
1835 Market St. – Suite 2600
Philadelphia, PA 19103

Dated: __9|17|10__            *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Plaintiffs' Response to Defendants' Motion for Summary Judgment on Plaintiff Bradley Mann's Claims, was served via electronic and first class mail, postage pre-paid upon the following:

Angelo Stio, III, Esquire
Eric J. Goldberg, Esquire
PEPPER HAMILTON, LLP
301 Carnegie Center – Suite 401
Princeton, NJ 08543

Stephen G. Harvey, Esquire
Barack Bassman, Esquire
PEPPER HAMILTON, LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

Dated: 9/17/10

SILVERMAN & FODERA, PC

Michael Lalli, Esquire
*Attorney for Plaintiffs*